# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY M. AGNELLO. Executrix of the Estate of FRANK R. AGNELLO, ) ) ) | |
| Plaintiff ) ) ) | |
| vs. ) | Civ. No. 07-19E |
| ) ) | |
| PARAGON DEVELOPMENT, LTD., ) ) ) | |
| Defendant, ) ) | |

## OPINION

Pending before the Court is Defendant's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2) and/or (3) or, alternatively, Motion for Transfer of Venue Pursuant to 28 U.S.C. § 1404(a)" (Doc. #2). In its motion, Defendant first argues that this Court lacks personal jurisdiction over Defendant and therefore, we must dismiss Plaintiff's Complaint against it. Defendant next argues that if this Court does have personal jurisdiction over it, pursuant to 28 U.S.C. §1391, the Western District of Pennsylvania is not the proper venue for this action and therefore it should be dismissed. Finally, Defendant argues that pursuant to 28 U.S.C. §1404(a), this matter should be transferred to the United States District Court for Nevada, Las Vegas Division. For the reasons set forth below, this Court finds that it does not have personal jurisdiction over Defendant Paragon and that it is in the interest of justice to transfer the matter to the United States District Court for Nevada, Las Vegas Division.

## A. Personal jurisdiction issue.

We turn first to the issue of whether we have personal jurisdiction over Paragon for purposes of Plaintiff's claims against Paragon. A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant to the extent permissible under the law of the forum state. Fed. R. Civ. P. 4(e); Pennzoil Prod. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 200 (3d Cir.1998) (citation omitted).

Pennsylvania's long-arm statute, 42 Pa. Cons.Stat. Ann. § 5322(a), states specific scenarios under which a court has jurisdiction over a non-resident defendant. Plaintiff is not arguing that any of these scenarios are applicable in the instant case.

In addition, the statute authorizes Pennsylvania courts 'to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment.'" Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (citing Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992)). Therefore, the statute's reach is coextensive with the Due Process Clause of the Fourteenth Amendment to the United States Constitution and we may exercise personal jurisdiction over Paragon provided that the exercise of such jurisdiction comports with the due process restrictions of the United States Constitution. Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 481 (3d Cir. 1993) (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984)).

Significantly, courts must resolve the question of personal jurisdiction "based on the circumstances that the particular case presents." Brooks v. Bacardi Rum Corp., 943 F.Supp. 559, 562 (E.D.Pa. 1996) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 485, 105

S.Ct. 2174 (1985). Due process, then, is an individualized inquiry. Mellon Bank, 960 F.2d at 1224-25. Consistent with the requirements of due process, we must ensure that a defendant is subjected to personal jurisdiction only where its activities have been purposefully directed at residents of the forum, or otherwise availed itself of the privilege of conducting activities there. Burger King, 471 U.S. at 472; Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Notably, "[w]hen a defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper. The plaintiff meets this burden and presents a *prima facie* case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." Mellon Bank (East), 960 F.2d at 1223 (citations omitted). Further, "courts reviewing a motion to dismiss a case for lack of *in personam* jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Carteret Savs. Bank v. Shushan, 954 F.2d 141, 142 n. 1 (3d Cir.), cert. den'd, 506 U.S. 817 (1992).

The due process inquiry turns on the defendant's contacts with the forum state. Personal jurisdiction may be either general or specific, and both the quality and quantity of the necessary contacts differs according to which sort of jurisdiction applies. In the instant matter, Plaintiff contends that we have specific personal jurisdiction over Paragon.

Therefore, we turn to the issue of whether we have specific jurisdiction over Paragon. Specific personal jurisdiction exists "when the plaintiff's claim is related to or arises out of the defendant's contacts with the forum." Mellon Bank, 960 F.2d at 1221. Specific personal jurisdiction comports with due process as long as the defendant has sufficient minimum

3

contacts with the forum state. The due process inquiry must focus on "the relationship among the defendant, the forum, and the litigation." Rush v. Savchuk, 444 U.S. 320, 327 (1980) (*quoting* Shaffer v. Heitner, 433 U.S. 186 (1977)). It has long been recognized that minimum contacts exist where the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. at 253. Put another way, when a defendant's conduct is such that it reasonably should have foreseen being haled into court in the forum, the necessary minimum contacts have been shown. World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Even a single act can support specific jurisdiction, so long as it creates a "substantial connection" with the forum. Burger King, 471 U.S. at 476.

It is the plaintiff's burden to demonstrate that the defendant has minimum contacts with the forum. Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984) (*quoting* Compagnie des Bauxites de Guinee v. L'Union, 723 F.2d 357 (3d Cir. 1983)). To meet this burden, a plaintiff "must come forward with sufficient jurisdictional facts by affidavit, depositions or other competent evidence to establish the court's jurisdiction over the defendant." National Precast Crypt Co. v. Dy-Core of Pennsylvania, Inc., 785 F.Supp. 1186, 1189 (W.D.Pa. 1992). "[F]actual discrepancies created by affidavits are generally resolved in favor of the non-moving party." Elbeco Inc. v. Estrella de Plato, Corp., 989 F.Supp. 669, 674 n. 3 (E.D.Pa. 1997).

As stated above, Plaintiff claims that Paragon breached the Employment Agreement entered into between Frank Agnello and Paragon when it failed to provide Frank with life insurance coverage and failed to pay Frank's estate a completion bonus as promised to Frank

4

in the Employment Agreement. Complaint, ¶¶ 16 and 19. The appellate court explained in Remick v. Manfredy, 238 F.3d 248 (3d Cir. 2001) that "[i]n determining [personal] jurisdiction over a breach of contract claim, we must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing. Id. at 256, citing, Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).

In the instant case, and viewing any factual discrepancies created by the affidavits submitted by the parties in favor of Plaintiff as the non-moving party, the connections between Paragon, Plaintiff's claims against Paragon and the Commonwealth of Pennsylvania are as follows.

Frank Agnello ("Frank") lived in Girard, Pennsylvania during the time period when he negotiated an Employment Agreement with Defendant Paragon. Mary Agnello Affidavit, ¶ 2. Girard, Pennsylvania is located within jurisdiction of the United States District Court for the Western District of Pennsylvania.

Lee Ploszaj ("Ploszaj"), the Development and Construction Manager[1] for Paragon, first contacted Frank in Puerto Rico in 2003 while he was working on a job in Puerto Rico to see if Frank would be interested in working on the construction of the Enoch Cree Resort and Casino project in Edmonton, Alberta, Canada in 2005 and 2006. Agnello Affidavit ¶¶ 6-7. Ploszaj and Frank spoke one more time about this job opportunity while Frank was in Puerto Rico. Id. Ploszaj then called Frank on the telephone at the Agnellos Girard home on October

---

[1] Ploszaj states in his Affidavit that he is the Chief Executive Officer for Paragon. Ploszaj Affidavit, ¶ 1. It is not clear to the court whether he maintained this title at the time of the events in question.

5

28, 2004 about Frank working on the casino project. Mary Agnello Affidavit, ¶ 6-7. During this conversation, Frank told Ploszaj that he would not consider working for Paragon unless the salary was $120,000, a completion bonus was promised and all employee benefits, including life insurance, were provided. Mary Agnello Affidavit, ¶ 7. On October 29, 2004, Frank sent Ploszaj his resume from his Girard Pennsylvania home. Mary Agnello Affidavit, ¶ 8. Employee contract negotiations took place between Ploszaj and Frank over several days following the initial October 28, 2004 contact. Mary Agnello Affidavit, ¶ 7, 9. During these negotiations, Frank was located in Girard, Pennsylvania. Mary Agnello Affidavit, ¶ 7, 9.

Frank went to Las Vegas, Nevada on December 28, 2004 to meet with Ploszaj and other Paragon employees to discuss the Canadian project. Mary Agnello Affidavit, ¶ 10. This discussion included the terms of Frank's employment with Paragon. Ploszaj Affidavit, ¶ 19.

After Frank returned from Nevada to Girard Pennsylvania, he received an e-mail from Ploszaj that had attached to it a draft of the Proposed Employment Agreement. Mary Agnello Affidavit, ¶ 10. Frank and Ploszaj then exchanged e-mails about the draft employment agreement between December 29, 2004 and January 3, 2005. Mary Agnello Affidavit, ¶ 10, 11, 13. In addition, Dennis Amerine, a Paragon employee, e-mailed Frank on January 3, 2005 and asked Frank to complete an Individual Due Diligence Questionnaire. Mary Agnello Affidavit, ¶ 12. Frank completed the Questionnaire in Girard, Pennsylvania and returned it via e-mail on January 6, 2005. Mary Agnello Affidavit, ¶ 12. Around this same time period, Frank also was contacted by e-mail and telephone in Girard, Pennsylvania by Sharon Bigelow, the office manager at Paragon; Bigelow wanted to put Frank in contact

with the Canadian lawyer who handled Paragon's immigration work for guidance on immigration and tax issues. Mary Agnello Affidavit, ¶ 14. On January 9, 2007, Frank e-mailed Ploszaj from his Girard, Pennsylvania home; to this e-mail Frank attached the Employment Agreement with proposed changes in blue. Mary Agnello Affidavit, ¶ 17. Ploszaj responded to this e-mail on January 12, 2005; Ploszaj attached additional changes to the Employment Agreement that had been approved by Paragon's president. Mary Agnello Affidavit, ¶ 18. Frank and Ploszaj exchanged e-mails about the bonus Frank wanted on January 13, 2005 and discussed the bonus. Mary Agnello Affidavit, ¶ 19. Ploszaj responded to this e-mail on January 13, 2005. Mary Agnello Affidavit, ¶ 19. On January 17, 2005, while at his home in Girard, Pennsylvania, Frank executed the signature page of the Employment Agreement and returned it to Paragon. Mary Agnello Affidavit, ¶ 20.

Whenever Frank spoke to Ploszaj on the telephone, Mary Agnello, Franks' wife, would overhear Frank's side of the phone conversation; she could not hear Ploszaj's side of the conversation. Mary Agnello deposition, pp. 10-11.

Article 4 of the Employment Agreement required that all notices required to be given would be sent to Frank at P.O. Box 13, Girard, Pennsylvania. 16417. Mary Agnello Affidavit, ¶ 20. Frank also executed a W-4; he indicated on the W-4 that his home address was Girard, Pennsylvania. Mary Agnello Affidavit, ¶ 21. Paragon also obtained a Pennsylvania State Identification Number which enabled it to withdraw from Franks' paycheck Pennsylvania taxes and to file quarterly and yearly tax reports to the Pennsylvania Department of Revenue. Mary Agnello Affidavit, ¶ 26. Paragon also paid unemployment taxes on Frank's behalf to the Commonwealth of Pennsylvania. Mary Agnello Affidavit, ¶

7

26.

On or about January 7, 2005, Ploszaj sent Frank via e-mail a Preliminary Master Schedule and a Detailed Cost Estimate Breakdown. Mary Agnello Affidavit, ¶ 15. Over the next several days and weeks, Frank spent approximately 65 hours reviewing, analyzing and discussing proposed modifications to both documents with Ploszaj; all of this work took place in Franks's Girard Pennsylvania home. Mary Agnello Affidavit, ¶ 15. Ploszaj asked Frank to review these documents and to advise Ploszaj on the budget and the schedule, and Paragon paid Frank approximately $3,148.62 for this work, sending Frank a paycheck for this work at Frank's home in Girard, Pennsylvania.[2]

All of Frank's paychecks issued by Paragon, until Paragon began a direct deposit program, were sent to Frank's home in Girard, Pennsylvania; at that point, Frank's checks were directly deposited in a Girard, Pennsylvania bank. Mary Agnello Affidavit, ¶ 25. After the direct deposit program began, Paragon would send documentation of Frank's compensation to Franks' Girard, Pennsylvania residence. Mary Agnello Affidavit, ¶ 27(j).

---

[2]Defendant argues that Plaintiff could not have personal knowledge of this since she testified at her deposition that she only heard Frank's side of the telephone conversations. See Mary Agnello deposition, pp. 10-11. The court agrees that as a general matter, it should not consider hearsay statements in considering the issue of personal jurisdiction. See Green Keepers, Inc. v. Softspikes, 1998 WL 717355, *3 (E.D. Pa. September 23, 1998) (holding "[r]uling on a Rule 12(b)(2) motion to dismiss requires resolution of issues beyond the pleadings. The plaintiff's allegations must be supported with appropriate affidavits and documents. The statements in an affidavit only have value when they are based on the affiant's personal knowledge or are admissible for some other reason.") (citation omitted). For purposes of this case, however, we have decided to err on the side of caution and have taken this arguably hearsay evidence into account in rendering our analysis of whether this Court has personal jurisdiction over Paragon.

8

Additionally, between January 7, 2005 and February 15, 2005, when Frank and Plaintiff left for Edmonton, Canada, on several occasions Frank, Ploszaj and other Paragon representatives discussed on the telephone a number of issues related to the Canada project. Mary Agnello Affidavit, ¶ 16. Frank was in Girard, Pennsylvania when these telephone conversations took place. Mary Agnello Affidavit, ¶ 16. Frank was paid one weeks salary prior to his arriving in Canada. Ploszaj deposition, p. 52.

Paragon also sent expense checks and airline tickets to Frank at his Girard, Pennsylvania residence. Mary Agnello Affidavit, ¶ 27(k).

Frank died on April 7, 2006 while employed with Paragon working as the Project Operations Manager of the Enoch Cree Resort and Casino in Edmonton, Alberta, Canada. Mary Agnello Affidavit, ¶ 4. After Frank died, Plaintiff, acting from her home in Girard, Pennsylvania, repeatedly attempted to get Paragon to pay the life insurance proceeds and bonus to which she opines her husband was entitled to under the terms of the Employment Agreement. Mary Agnello Affidavit, ¶ 23 and 24.

Paragon did not obtain life insurance coverage for Frank. Ploszaj Affidavit, ¶ 33. Paragon states that the reason they did not obtain life insurance coverage was that due to Frank's health history and age, they could not get an insurance company to provide coverage for Frank. Ploszaj Affidavit, ¶ 31.

The Employment Agreement states that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Nevada and the parties hereby submit to the jurisdiction of the Courts of the State of Nevada." Employment Agreement, ¶ 4-3.

9

Paragon is incorporated pursuant to the laws of Nevada and has its principal place of business in Nevada. Ploszaj Affidavit, ¶ 2. Paragon has never maintained an office in Pennsylvania; its only office in the United States is in Nevada. Ploszaj Affidavit, ¶ 5. Paragon has never paid any income, corporate, or other such business taxes or filed any government reports in Pennsylvania, with the exception of establishing withholding tax for Frank, at his request, and paid from his salary. Ploszaj Affidavit, ¶ 9. No Paragon representative entered Pennsylvania in order to negotiate the contract with Frank. Ploszaj Affidavit, ¶ 23. All attempts to secure life insurance for Frank occurred in Nevada and Canada. Ploszaj Affidavit, ¶¶ 31-34.

Taking all of this evidence into account, we find that even viewing the evidence in a light most favorable to Plaintiff as the non-moving party, upon consideration of the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealings, that the evidence of record simply does not support a finding that Paragon has sufficient minimum contacts with Pennsylvania "such that it reasonably should have foreseen being haled into court in the forum." Therefore, this Court does not have specific personal jurisdiction over Paragon relevant to Plaintiff's breach of contract claims.

In so concluding, we found the following evidence especially compelling. First, Paragon contacted Frank Agnello about the employment opportunity in Canada both while Frank was in Puerto Rico and in Pennsylvania; indeed, the first contacts by Paragon with Frank about the project manager position were made while Frank was in Puerto Rico. Second, the terms of the Employment Agreement were negotiated both in Nevada and in

Pennsylvania. Third, the Employment Agreement was related to a project located in Canada. Fourth, it was Paragon's responsibility under the terms of the contract to obtain life insurance for Frank, and this responsibility (or lack thereof) was undertaken in Nevada. Fifth, the bonus clause at issue in the Employment Agreement was related to the Canadian project. Sixth, while Frank may have done preliminary work on the Canadian project at the request of Ploszaj for a few weeks while he was still in Pennsylvania, Frank performed the vast majority of his job, approximately fourteen months, in Canada. Seventh, the Employment Agreement states that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Nevada and the parties hereby submit to the jurisdiction of the Courts of the State of Nevada." Finally, although Plaintiff emphasizes that Frank's paychecks were sent to Frank's home in Pennsylvania and later, direct deposited in a Pennsylvania bank with pay statements being sent to Frank's home in Pennsylvania, and Paragon obtained a Pennsylvania State Identification Number which enabled it to withdraw from Franks' paycheck Pennsylvania taxes and to file quarterly and yearly tax reports to the Pennsylvania Department of Revenue and Paragon paid unemployment taxes on Frank's behalf to the Commonwealth of Pennsylvania, these contacts with Pennsylvania are not enough to convince this Court that this Court has specific personal jurisdiction over Paragon.

**B. Venue Issue.**

Lacking personal jurisdiction over Defendant Paragon, the next issue is whether we should grant Defendant's Motion to Dismiss and dismiss the Complaint against Paragon, or deny Defendant's motion to dismiss and instead, transfer the action to the United States District Court for Nevada, Las Vegas Division pursuant to 28 U.S.C. § 1406(a). In Lafferty v.

St. Riel, 495 F.3d 72 (3d Cir. 2007), the United States Court of Appeals for the Third Circuit recently cited the United States Supreme Court decision in Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465-66, 82 S.Ct. 913 (1962), for the proposition that pursuant to 28 U.S.C. §1406(a), a federal district court may transfer, rather than dismiss a case that a plaintiff initially brought in the wrong forum, regardless of whether the district court otherwise has personal jurisdiction over the defendant, so long as the transfer is done in the interest of justice. Id. at 77. Here we find that it would be in the interest of justice to transfer this action to the United States District Court for Nevada, Las Vegas Division as opposed to dismissing it outright. An appropriate Order will follow.

January 2, 2008

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior District Court Judge